**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.   No. 11CR1955 WJ

JAMES CARNEY RITTERHOFF,

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING GOVERNMENT'S MOTION FOR REVIEW OF MAGISTRATE JUDGE'S RELEASE ORDER**

THIS MATTER comes before the Court upon the Government's Motion for Review of Magistrate Judge's Release Order, filed June 21, 2011 (**Doc. 13**), following an evidentiary hearing on the matter.[1]  I took the matter under advisement, and upon reviewing the testimony of the witnesses, arguments of counsel and the relevant law, I find that the Government's motion is well-taken in part and the requested relief will be granted in full.

**Background**

Defendant is charged with attempted enticement of a minor, solicitation of child pornography, and sending child pornography to a minor for the purpose of inducing the minor to commit an illegal act, in violation of 18 U.S.C. §§ 2422(b), 2252A(3)(B)(ii) & 2252A(6). Defendant waived his preliminary hearing, and the Magistrate Judge held a detention hearing.[2]

---

[1] Defendant did not file a written response, but all of the issues related to this matter were argued at length during a lengthy evidentiary hearing held on June 28, 2011, which was continued into a second hearing held on July 22, 2011. The Court has considered defense counsel's arguments and has reviewed the case law which formed the basis for those arguments.

[2] Little, if any, of the evidence introduced at the June 28 and July 22 hearings was presented to the Magistrate Judge at the initial detention hearing.

Following that hearing, and relying on the Pretrial Services Report, the Magistrate Judge the Court set conditions of release allowing Defendant to reside at a halfway house. Doc. 12. That Order is stayed pending the Government's appeal.

## I.     Underlying Facts

The facts in this case are set out in the Government's brief, and are based on Defendant's online conversations with undercover officers.  Defendant had these conversations with two personas of an undercover detective in New York and an undercover officer in New Mexico ("Undercover Mom" and a "Undercover Child" posing as a thirteen year-old girl), which took place from February 2011 through June 2011. In his conversations with Undercover Mom, a purported pedophile herself, Defendant admitted that he is a pedophile and repeatedly expressed interest in raping her two daughters, ages thirteen and nine. In seeking to plan the rapes, Defendant stated that he could break into Undercover Mom's home and conduct a prolonged and violent rape of the two girls at gunpoint.[3] Over the course of his interactions with Undercover Mom, Defendant often returned to his plan for the rapes, repeatedly assuring her that his interest in raping the children was real—not fantasy. He also informed Undercover Mom that he was a former law enforcement official.

Defendant relayed specific plans to carry out his intentions.  For example, Defendant offered to perform physical tasks and security including that he would kill someone for her in exchange for money and the opportunity to rape her daughters.[4]  In making his offer, Defendant

---

[3] Defendant owned a gun.  At the time of his arrest, Defendant was working as an armed courier.

[4]  Selected portions of the transcripts of these conversations are included in the Government's brief, but are omitted here for the sake of brevity. The Government did not attach a copy of the transcript which contains portions of cited statements by Defendant.  However,

told Undercover Mom that his law-enforcement training would be useful in avoiding apprehension for their sexual abuse. On May 4, 2011, at 11:53 p.m. Defendant boasted that he had a CD-ROM disk detailing internet-investigations techniques from a class that he had taken.[5] At one point in his conversations with Undercover Mom, Defendant stated that he would "do anything to stay out of jail" and would rather "take [him]self out" rather than be imprisoned."

Defendant then initiated a series of online conversations with the girl, Undercover Child, during which Defendant repeatedly asked Undercover Child to have sex with him. He sent Undercover Child a series of links to pornographic videos of, what appear to be teenagers and pre-teens engaged in sexual acts with adults. He instructed Undercover Child to view the videos and prepare herself to perform those sexual acts with him, describing in graphic detail the sex acts that he hoped to engage in with Undercover Child. Defendant repeatedly instructed her to masturbate, including instructing her to masturbate while viewing his photo, which he had provided. During the same conversations, Defendant persistently asked Undercover Child to send him photos of herself, including a topless photo, providing her with detailed instructions on how to upload and email the photo.

In addition to his online interactions with Undercover Mom and her daughters, Defendant also created a profile on a website called "fetlife" on which he started discussions about looking for someone to play the role of his daughter with the hope that it "can turn into something more than just play."

---

Defendant's objection to the statements is primarily that they are taken out of context and not that they are inaccurate. Also, the Homeland Security Special Agent who was assigned the case and who reviewed the online chats testified at the hearing.

[5] A search of Defendant's locked room uncovered a binder with literature on an internet investigations class, including a CD-ROM disc on that subject.

**II.     Relevant Statutes**

Defendant is charged with violations of statutes which prohibit sexual exploitation of children and other illegal sexual activity. 18 U.S.C. § 2252A(3)(B)(ii) addresses conduct of a person who:

> advertises, promotes, presents, distributes, or solicits through the mails, or using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any material or purported material in a manner that reflects the belief, or that is intended to cause another to believe, that the material or purported material is, or
> (i) an obscene visual depiction of a minor engaging in sexually explicit conduct; or
> (ii) a visual depiction of an actual minor engaging in sexually explicit conduct.

18 U.S.C. § 2252A(3)(B)(ii). Defendant is also charged with the violation of 18 U.S.C.§ 2252(A)(6) which prohibits the knowing distribution, offer or provision to any minor of

> any visual depiction, including any photograph, film, video, picture, or computer generated image or picture, whether made or produced by electronic, mechanical, or other means, where such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct. . . .

18 U.S.C. § 2252(A)(6). Last, Defendant is charged with the violation of 18 U.S.C.§ 2422, which criminally punishes someone who

> knowingly persuades, induces, ENTICES, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense.

18 U.S.C. § 2422.

**Discussion**

**I.     Legal Standard**

A motion to review a magistrate judge's release order under 18 U.S.C. § 3145(a) "should be considered and ruled upon in the first instance by a district judge in the court of original jurisdiction." *United States v. Cisneros,* 328 F.3d 610, 615 (10th Cir. 2003). "The standard of

review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is *de novo.*" *Id.* at 616 n. 1.

Probable cause to believe that Defendant committed these crimes has already been found. Thus, pursuant to 18 U.S.C. § 3142(e), a statutory presumption is created "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."[6] The presumption can be rebutted by presenting "some evidence contrary to the presumed fact."*United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991); *U.S. v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991) (defendant's burden of production is not heavy, but some evidence must be produced). Further, even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain. *Stricklin*, 932 F.2d at 1355.

The Government contends that Defendant poses both an impermissible danger to the community and a flight risk, and Defendant seeks to rebut the presumption created within the statutory framework of the crimes charged. To determine whether the presumptions of dangerousness and flight are rebutted by Defendant, the Court must consider:

> (1) the nature and circumstances of the crime charged;
>
> (2) the weight of the evidence against the defendant;
>
> (3) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct;
>
> (4) the nature and seriousness of the danger to the community or to an individual

---

[6] The presumption applies to crimes of violence, which includes the charged offenses in this case. *See* 3142(e)(3)(E).

that would be posed by release.

8 U.S.C. § 3142(g).

## II.     Defendant Has Not Offered any Evidence to Rebut the Statutory Presumption

Defendant attempts to rebut the statutory presumption on several grounds: that the alleged crime was "virtual" because there was no actual minor victim; that Defendant's statements were merely "harmless banter" taken out of context, and that Defendant's statements – which form the basis of the Government's case for the crime of solicitation – are insufficient to fall under that statute.

A.     <u>Government's Evidence Based on Defendant's Statements</u>

Defendant claims that the Government cherry-picked Defendant's statements so that they are taken out of context.  For example, defense counsel argues that Defendant was suspicious throughout his conversations with Undercover Mom and Undercover Child that he might be dealing with undercover police officers. She points out that, contrary to the Government's representations, Defendant did not initiate offering to kill someone in order to gain Undercover Mom's trust, but predicated his exchanges with Undercover Mom with cautious conditional language ("If you want to, if this is what you'd like").  Defendant also suggested ways Undercover Mom could prove that she was not a law enforcement official, such as groping one of her daughters' breasts online for him to view. Defendant told Undercover Mom that he realized a law enforcement official would not be able to carry out such acts.

While defense counsel makes the general charge that the Government selected certain statements of Defendant out of context, she does not support this charge with specific references to Defendants' statements which would put the selected portions in proper context.  The hearing was continued at the request of defense counsel.  Doc. 19 at 50:22-51:4 (transcript of July 15th

hearing). Thus, counsel had ample opportunity to find evidence which would bolster her argument. The fact that Defendant exercised caution to make sure he was not dealing with law enforcement does not misrepresent any of the statements presented by the Government as evidence of Defendant's intent to commit the crimes with which he is charged. If anything, Defendant's fear of getting caught shows the deliberateness of his conduct and his planning.

B.  Defendant's Distinguishing of Government's Cases

The Government maintains that the appropriateness of detention is supported by case law and the facts of this case, noting that such cases hold that pretrial detention of individuals who are sexual predators of children is a "legitimate government objective." *See, e.g., U.S. v. Abad*, 350 F.3d 793 (8th Cir. 2003). The Government also refers to cases which point out the difficulty of protecting the community from the addictive nature of sexual predators while these individuals await trial. *See U.S. v. Cox*, unpubl. case, 2008 WL 94769 (E.D. Mich 2008) (denying defendant's motion to revoke order of detention pending trial and concluding that no conditions would reasonably assure defendant's appearance and safety of community, where defendant's internet-based effort to entice minor demonstrated "an addictive sexual nature that cannot be suppressed simply by a restrictive set of bail conditions"), citing *U.S. v. Minnici*, 128 Fed. Appx. 827 (2d Cir.2005). In this case as well, Defendant's reliance on the internet would prove too difficult to control with bail conditions, with such easy access to the internet available, as the district court in the Eastern District of New York noted:

> [C]onditions are difficult, if not impossible, to enforce and insufficient to assure the safety of the community under the circumstances of this case. Specifically, if the defendant is not subject to home detention, there would be no way to monitor his activities during the course of the day, including his interaction with children, and his use of phones and the internet. Even if the Court were to order electronic monitoring and home detention of the defendant pending trial, that condition would not adequately address his ability to access phones or computers in his

> home which could be used for the types of illicit activities described above, even if steps were taken to try to prevent those items from being present or available in the house. In this day and age, with devices such as cellphones, Blackberries, and laptops, there are no conditions which can reasonably assure the safety of the community under the particular circumstances of this case if the defendant is released on bail.

*U.S. v. Reiner*, 468 F.Supp.2d 393, 398 -399 (E.D.N.Y.,2006); *see also Minnici*, 128 Fed. Appx. at 829-30 (noting the difficulty monitoring defendant's access to the Internet within the confines of his home); *United States v. Brown,* 2008 WL 2098070, *5 (S.D.Ohio 5/16/08) (same).

At the hearing, defense counsel mounted an attack on the cases cited by the Government, distinguishing them all from the instant case on several grounds. Counsel noted that this case does not involve the same risk of danger to the community because it involves only a "virtual" crime without an actual victim, unlike the defendants in the cases cited by the Government. Defense counsel also argued that the risk of flight is also considerably less here because Defendant is a U.S. citizen who was successfully employed at the time he was arrested, and that the defendants in the cases relied on by the Government had either confessed or were already convicted.

Most of Defendant's arguments are insufficient to rebut the statutory presumption to which the Government is entitled. First, the solicitation statute does not require an actual minor victim. *See U.S. v. Lee*, 603 F.3d 904 (11th Cir. 2010) (Defendant could have been convicted of attempted enticement of a minor to engage in sexual activity even though he attempted to exploit only fictitious minors; although defendant communicated only with the purported mother of two fictitious minors). Thus, Defendant cannot rebut the statutory presumption by the fact that he was chatting with undercover police officers. Second, the fact that Defendant has meager financial resources does not sufficiently rebut the statutory presumption that he is a flight risk.

Defendant made statements to the effect that he would go to great lengths to avoid prison, realizing that his status as a sex offender and a former law enforcement official would make the prospect of incarceration particularly formidable.  Further, Defendant has no ties to the community in the form of real property or immediate family.  All of these factors weigh against any attempts at rebuttal to the statutory presumption that he is a flight risk.

The Government also argues that Defendant's conduct during his arrest contributes to Defendant's risk of flight.  Defendant was arrested on June 17, 2011 as he was leaving his apartment to go to his job as an armed courier. He had a loaded, holstered firearm on his hip. As Defendant neared his vehicle, he was approached by federal agents seeking to arrest him. The agents announced their presence as law enforcement officers. Each agent wore body armor and a helmet that had "police" prominently displayed in bright yellow letters on all sides. Each pointed their assault rifles at him and commanded Defendant to surrender.  In response, Defendant reached for his gun, and according to the Government, partially withdrew the gun from its holster. Defense counsel disputes this fact, contending that Defendant's hand moved toward his gun, but never removed the gun from its holster.  Regardless of what happened during these few split seconds, I am not inclined to include this incident in considering Defendant as a flight risk. Defendant was arrested in the early morning hours while it was still dark, and was suddenly faced with five or six uniformed adults with assault rifles jumping out of a van yelling at him. Defense counsel's explanation for this behavior was that Defendant thought he was being robbed. It would be a natural response for Defendant, a former law enforcement official working at the time as an armed courier, to reach for his weapon.  However, even without considering this incident, Defendant has not successfully rebutted the statutory presumption that no condition or combination of conditions will reasonably assure Defendant's appearance at future proceedings.

Defendant presents an argument that does have some clout in rebutting the statutory presumption of dangerousness, at least under the § 2422(b) charge. Specifically, Defendant argues that his acts are insufficient to fall under the solicitation statute because the alleged conduct did not cross the line from "craving" to criminal conduct, and that therefore no substantial step was taken toward committing the offense.

A conviction under § 2422(b) requires a finding only of an attempt to entice or an intent to entice, and not an intent to perform the sexual act following the persuasion. *Id*. (a conviction under § 2422(b) requires a finding only of an attempt to entice or an intent to entice, and not an intent to perform the sexual act following the persuasion; *United States v. Thomas*, 410 F.3d 1235, 1244 (10th Cir.2005); *U.S. v. Dhingra*, 371 F.3d 557 (9th Cir. 2004) (focal point is on the intent to persuade rather than the sexual act). That being said, the criminal conduct must consist of substantial steps that are more than mere preparation in order for the conduct to fall under the solicitation statute. The step "must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." *U.S. v. Brand*, 467 F.3d 179, 202 (2d Cir. 2006).

Defendant contends that he made no specific plans to carry out his fantasies or sexual cravings, and took no further action past his online chats which would be necessary to bring his conduct within the purview of § 2422(b), such as getting in a car and traveling to meet Undercover Mom and/or Undercover Child. At oral argument, Defendant distinguished the Government's cases on this point by noting that in all of those cases, the defendants traveled to a pre-determined meeting place and actually met with the minor victims.

In *Dhingra*, one of the cases cited by the Government, the defendant traveled, met and

fondled the intended victim. While the Ninth Circuit in that case did not consider sexual contact to be required under § 2422(b), it considered such conduct as "certainly probative." 371 F.3d at 565. Defendant in the instant case is not contending that sexual act is required in order for the alleged conduct to fall within the solicitation statute, but instead argues that the conduct fell short of committing a substantial step toward the commission of that offense. The defendant in the other case relied on by the Government, *U.S. v. Brand*, 467 F.3d 179, actually went to the Port Authority bus terminal, the meeting place that he had established with the purported victim, who was really a Government agent.[7]

In this case, even based on the Government's evidence, there is no indication that Defendant actually attempted to set up meeting to further his plans to rape Undercover Child. Defendant went as far as to look up several sites for recreational vehicle ("RV") campgrounds to price the cost to rent an RV.[8] However, no plan was made to rent an RV and travel to a specific campground. Defendant had no credit card to use in order to carry out the plan. Defense counsel argued that references to a plan to carry out the rape were made by the undercover officers more than the Defendant, and that one of the undercover officers offered to pay for the RV even before there was any discussion about where the RV would be traveling.

---

[7] Although *Brand* is a sufficiency of the evidence case following conviction, the court's analysis is nevertheless relevant in its discussion of a substantial step in the commission of §2422(b). Defendant cited to other sufficiency of the evidence cases where the courts found substantial steps were taken under the solicitation statute. In these cases as well, the defendants took steps considerably further along than the Defendant in the instant case. *See, e.g., U.S. v. Murrell,* 368 F.3d 1283 (11th Cir. 2004) (defendant carried out agreement to meet at hotel and paid intended victim $300); *U.S. v. Lee,* 603 F.3d 904 (11th Cir. 2010 (defendant sent gifts and planned trip in detail).

[8] Defendant stated he did not want to carry out the rape of the minor in a hotel room or other public place. Doc. 19 at 37-38.

Based on the relevant case law, I am persuaded that with regard to the solicitation statute, 18 U.S.C. § 2422(b), Defendant has proven a weakness in the Government's evidence on this charge in that this evidence does not tend to show that Defendant engaged in conduct amounting to a "substantial step" toward the commission of that crime.  As a result, Defendant has successfully rebutted the statutory presumption that he is a danger to the community regardless of conditions of release which may be put into place.

The Court's inquiry does not end here because Defendant is also charged with the offenses of the solicitation of child pornography, and sending child pornography to a minor for the purpose of inducing the minor to commit an illegal act, in violation of 18 U.S.C. §§ 2252A(3)(B)(ii) and 2252A(6).   In the next section, the Court addresses whether Defendant has rebutted the statutory presumption with regard to these other statutes.

C.      Desired Placement in Halfway House and Not the Community

At the hearing, defense counsel made a valid point in that she is seeking to get her client placed in a halfway house, and not back to his apartment.  In the latter situation, there is no question that Defendant would pose a danger to his community and a risk of flight.  Easy access to the Internet makes pretrial supervision of individuals detained on charges of sexual exploitation of children near impossible if they are released to their own residences.  Thus, the question here is whether Defendant's release to La Posada Halfway House[9] would allow the imposition of conditions which would ensure that Defendant does not have this access.

The Court recently ordered Probation/Pretrial Services to supplement the Pretrial Services Report with information concerning employment requirements and the level of

---

[9]  The Pretrial Services Report recommended placement of Defendant at La Posada is located in Albuquerque, New Mexico.

supervision available at La Posada, including access to computers. *See* Doc. 24. The supplement informs that residents are permitted to leave the premises to go to work and to find employment. *See* Doc. 27. Employment and work hours are verified by staff personnel, and by the resident's Pretrial Services Officer, including telephone calls to the resident at the workplace. Residents are also allowed to go to local stores to purchase toiletries and other necessities. Access to computers or internet access may be imposed through Court order.

Because La Posada is a halfway house and not a detention center, it is not set up to account for residents' whereabouts on a 24-hour basis. Thus, because there is a certain amount of "free" and unsupervised time available to residents, there would be opportunities for Defendant to find access to the internet and to engage in the kind of activities which are similar to those with which he has been charged. The same can be said with regard to a risk of flight. Defendant has no solid ties to the community, owns no real property in the state, and possesses the skills and knowledge of a former law enforcement official. These factors contribute to the likelihood of Defendant's attempts to flee the halfway house. In the face of mandatory minimum imprisonment if he is convicted on the charges that are brought against him, and the prospect of imprisonment as both a sex offender and former law enforcement officer, Defendant has stated that he would take extreme measures in order to avoid incarceration. Given these factors, I find that the risk of flight is high, regardless of any conditions which could be imposed during release.

## Conclusion

Under the Bail Reform Act, detention of a person is warranted where a finding is made that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community. . . ." 18 U.S.C. §

3142(e).  Based on foregoing discussion, I find and conclude that there are no conditions which could be fashioned to assure the safety of the community and Defendant's appearance as required at future proceedings.

With regard to the solicitation statute, 18 U.S.C. § 2422(b), Defendant has proven a weakness in the Government's evidence on this charge in that the evidence does not tend to show that Defendant engaged in conduct amounting to a "substantial step" toward the commission of that crime.  As a result, Defendant has successfully rebutted the statutory presumption that he is a danger to the community regardless of conditions of release which may be put into place.

However, even considering that Defendant has requested placement in a halfway house and not the community at large, Defendant has not successfully rebutted the statutory presumptions created under 18 U.S.C. §§ 2252A(3) and A(6), concerning either dangerousness to the community or risk of flight.  Accordingly, I find and conclude that the Government's Motion for Review of the Magistrate Judge's Order Setting Conditions of Release **(Doc. 13)** is hereby GRANTED in that the Magistrate Judge's Order Setting Conditions of Release (Doc. 12) be SET ASIDE and that Defendant be remanded to the custody of the U.S. Marshal for the District of New Mexico pending further order of the Court.

**SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE